UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JPMORGAN CHASE BANK, N.A.,

        Plaintiff,

v.

CITY OF MONONA ,

        Defendant.

Case No.:  17-CV-752

## COMPLAINT

**NOW COMES** the Plaintiff, JPMorgan Chase Bank, N.A., ("Chase Bank"), by and through its attorneys, Hinshaw & Culbertson LLP, and as and for its complaint against the Defendant City of Monona ("Monona") respectfully states and alleges as follows:

### NATURE OF THE ACTION

1.     Monona is about to embark on a major waterfront redevelopment project of property located on the Yahara River.  Chase operates a bank branch located at 802 W. Broadway, Monona, Wisconsin (the "802 Broadway Property"), which is one of the properties located within the site to be redeveloped and, recently, Chase was advised that its lease for that branch was being terminated and that it must vacate the property by October  19, 2017. Notwithstanding Chase's full support for community and economic redevelopment plans for Monona, Chase has repeatedly advised Monona that Chase is unable to vacate by the October 19, 2017 deadline.  Chase has repeatedly requested a short extension of time to relocate its branch.  Monona has refused, leaving Chase no choice but to bring this action regarding the unlawful termination of Chase's lease.

## PARTIES

2.      Plaintiff, Chase Bank, is a national bank. Chase Bank has multiple branch locations throughout the United States, including Wisconsin. Chase Bank's articles of association designate 1111 Polaris Parkway, Columbus, OH 43240 as its main offices. For diversity jurisdiction purposes, Chase Bank is a citizen of Ohio.

3.      Defendant Monona is a municipal corporation whose headquarters are located at 5211 Schluter Road, Monona, Wisconsin 53716.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §1983.

5.      Jurisdiction is also proper pursuant to 28 U.S.C. §1332, based on diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Venue in this district is proper under 28 U.S.C. §1391(b)(2) and (3).

## BACKGROUND FACTS

**I.      Chase Bank's Leasehold Estate at the 802 Broadway Property**

7.      Pursuant to the terms and provisions of the Office Lease dated July 20, 1992 (the Office Lease, as amended, is the "Lease Agreement"), by and between American Family Mutual Life Insurance Company, as Landlord, and Bank One Bank, as Tenant, Bank One Bank acquired a leasehold estate in a substantial part of the 802 Broadway Property.  A true and correct copy of the Lease Agreement and amendments thereto are attached hereto as Exhibit "A".

8.      The original leasehold estate included a 4,100 square foot suite on the first floor of the 802 Broadway Property, two drive up lanes, a drive up ATM, and at least twenty parking spaces for customer use.

2

9.     By various mergers, Chase Bank and Bank One Bank became the same legal entity and, pursuant to such mergers, Chase Bank became the owner of Bank One's leasehold estate at the 802 Broadway Property ("Chase Bank's Leasehold Estate"). The photograph below depicts the building where Chase Bank's Leasehold Estate is located (the "Chase Bank Building").



10.    The Lease Agreement was last amended on December 17, 2012, which extended the term of Chase Bank's Leasehold Estate through December 31, 2019.

11.    The Lease Agreement grants to Chase Bank options for two five-year renewals of the term of Chase Bank's Leasehold Estate, with predetermined increases in the rental rate.

12.    With both five-year renewals being exercised, Chase Bank's Leasehold Estate may not terminate until 2029.

13.    Chase Bank's Leasehold Estate is an interest in real property pursuant to the laws of the State of Wisconsin.

300452427v1 0997838

II.     **Monona Acquires 802 Broadway Subject to Chase Bank's Leasehold Estate**

14.     On December 13, 2013, Monona Drive Properties, LLC, a Wisconsin limited liability company ("Monona-LLC"), solely owned and controlled by Monona, acquired fee simple title to the 802 Broadway Property, subject to Chase Bank's Leasehold Estate via a Quit Claim Deed.  This acquisition of the 802 Broadway Property was a voluntary transaction and not the result of a condemnation or by a deed in lieu of condemnation.

15.     In relevant part, the Lease Agreement states:

> SECTION 12.14 SUCCESSORS.  This lease shall be binding upon and inure to the benefit of the parties, their legal representatives, successors, heirs, devisees, executors, administrators, successors in interest, and assigns.

16.     As discussed below, Monona is a successor in interest and/or assign of the original Landlord and is, therefore, bound by the terms and provisions of the Lease Agreement.

III.    **Monona's Riverfront Redevelopment Project**

17.     As explained in literature published by Monona, the Monona River Redevelopment Project calls for a vibrant, mixed use, waterfront district of an 8.5 acre parcel at Broadway, Bridge Road, and the Yahara River.

18.     The plans include development of approximately 233 market rate residential units, 26,000 square feet of commercial space, and a stand-alone 33,000 square foot office building.

19.     Monona's vision for the project is to create an urban waterfront destination serving as a year-round gathering place and recreating "trailhead" focused on active healthy lifestyles, in a village-like setting.

300452427v1 0997838

20.     By creating physical and economic vitality, eliminating blight, and ensuring appropriate land uses, Monona will be able to provide high-quality development that is tax generating and an attractive destination for new and existing residents.

21.     The objectives of the Monona Riverfront Redevelopment Project include public space/waterfront, economic development, housing and mixed use commercial land uses, parking, and quality design and density goals.

22.     Monona Riverfront Redevelopment Project will be constructed in three phases.

23.     Chase Bank's Leasehold Estate is located in the area designated as "Phase 1."

24.     Monona has identified Chase Bank's Leasehold Estate at the 802 Broadway Property as a "priority" for the Riverfront Redevelopment Project because of "its prime location along the Yahara River and high visibility from Broadway and the Beltline."

25.     In Phase 1, the development team will construct a 5 story mixed use building over a lower level parking garage.

26.     Phase 1 construction requires the demolition of the Chase Bank Building and the termination of Chase Bank's Leasehold Estate on the 802 Broadway Property.

27.     To effectuate the Riverfront Development Project, Monona needed to condemn Chase Bank's Leasehold Estate; however, Monona chose to unlawfully claim that Chase Bank's Leasehold Estate has been terminated without being acquired by lawful condemnation proceedings.

**IV.      Condemnations Under Wis. Stat. §§ 32.03 and 32.06**

28.     Monona's taking of properties and leasehold interests as part of the Riverfront Redevelopment Project is subject to Wisconsin's condemnation laws.

300452427v1 0997838

29.     In relevant part, Wis. Stat. § 32.03 prohibits Monona from condemning property it owns.

30.     Moreover, in a case where a municipal landlord is seeking to condemn a private leasehold, Wis. Stat. § 32.06 sets forth a mandatory procedure that must be followed before such a leasehold can be condemned and the leasehold owner-tenant can be evicted.

31.     First, the landlord-condemnor, such as Monona, must determine the necessity of taking the private leasehold estate.

32.     Once the landlord-condemnor, such as Monona, has made a determination of necessity, the landlord-condemnor must initiate the creation of at least one appraisal for the private leasehold estate it intends to acquire and must inform the owner of said private leasehold estate, such as Chase Bank, that it has the right to obtain its own counter-appraisal.

33.     If the owner of a private leasehold estate, such as Chase Bank, intends to obtain its own counter-appraisal, the owner of the private leasehold estate must submit the appraisal to the landlord-condemnor within 60 days after the owner receives the landlord-condemnor's appraisal.

34.     After having the target private leasehold estate appraised and receiving the leasehold estate owner's counter-appraisal, a landlord-condemnor, such as Monona, must negotiate with the owner of the private leasehold estate, such as Chase Bank, for the purchase of the property.

35.     If negotiations fail, the landlord-condemnor, such as Monona, must provide the owner of the private leasehold estate, such as Chase Bank, with a Jurisdictional Offer.

36.     Within 40 days of receiving a Jurisdictional Offer, the owner of a private leasehold estate, such as Chase Bank, can contest the landlord-condemnor's right to condemn.

6

37.     If the Jurisdictional Offer is not accepted or is rejected within 20 days, the landlord-condemnor, such as Monona, may petition the court for a hearing before the condemnation commission.

38.     Within 60 days after the date of filing of the commission's award either party may appeal the commission's award to the circuit court.

39.     Monona failed to follow the legal requirements for condemning and acquiring the Chase Bank Leasehold Estate.

**V.     Monona Repeatedly Has Admitted That It Owns the 802 Broadway Property, and It Owns or Controls Monona-LLC**

40.     On multiple occasions, Monona and/or its agents have admitted both that: (a) Monona owns the 802 Broadway Property and (b) Monona-LLC is an entity owned and controlled by Monona for the purpose of acquiring property.

41.     For example, on October 28, 2014, Monona-CDA[1] had a meeting at the Monona Public Library.  In relevant part, the minutes of the October 28, 2014 state that Monona-CDA approved a proposed Project Plan for the establishment of Redevelopment District No. 9.

42.     The Project Plan approved at the October 28, 2014 meeting stated:

*The Chase Bank building* (parcel 16) is only partially occupied by bank operations. The remaining space is either vacant or occupied by different tenants . . . *This site*, and many others in the district have recently *come under City control with the explicit purpose of being redeveloped*.

43.     The Project Plan also declares that "*the City moved quickly in early 2014 to purchase the Chase Bank . . . .*"

---

[1] On September 7, 1982, more than 31 years before the acquisition by Monona of the 802 Broadway Property, Monona adopted an ordinance creating the Monona Community Development Authority ("Monona-CDA").  The ordinance that created Monona-CDA authorizes Monona-CDA to act as Monona's agent.  Monona-CDA is an authorized agent of Monona which was created for the purpose of carrying out urban renewal programs and housing projects. See http://mymonona.com/230/Community-Development-Authority/.

300452427v1 0997838

44.     Similarly, on January 27, 2015, Monona-CDA held a meeting at Monona City Hall to discuss progress and next steps for the waterfront redevelopment project at Bridge Road and Broadway. Minutes from that meeting state, in relevant part: ***"the City* currently owns"** the **802 W. Broadway Property.**

45.     Next, on March 29, 2016, Monona-CDA held a meeting to discuss a resolution to exercise an option to purchase real estate located at 6414 Bridge Road.  The resolution at issue stated, in relevant part: "***Monona Drive Properties LLC ("MDP") is a limited liability company controlled by the City*** for the purpose of acquiring real estate as necessary in the public interest."

46.     On December 12, 2016, Monona-CDA had a meeting at Monona Public Library to consider a resolution to authorize a lease with the Latino Chamber of Commerce for property located at the 802 Broadway Property. Notably, this leasehold transaction with the Latino Chamber of Commerce occurred after the 802 W. Broadway Property was acquired by Monona-LLC.

47.     Monona's lease with the Latino Chamber of Commerce explicitly states that ***the City of Monona is the owner of the 802 Broadway Property*** and the landlord vis-à-vis the Latino Chamber of Commerce:

> THIS LEASE entered into as of this 16 day of November, 2016 by and between **City of Monona**, hereinafter referred to as "***Landlord***," . . . and **Latino Chamber of Commerce**, hereinafter referred to as "Tenant" . . .

48.     Further, section 17 of Monona's lease with the Latino Chamber of Commerce states:

> Whenever in this Lease it shall be required that notice be given by either party hereto to the other, such notice shall be forwarded by certified mail addressed as follows:
>
> > ***To the Landlord:***     ***City of Monona*** . . .

8

To the Tenant:      Jessica Cavazos
                       Executive Director
                       Latino Chamber of Commerce

## VI.   In Violation of Wis. Stat. § 32.03, Monona-CDA Votes to Condemn Property that It Owns.

49.    On July 11, 2017, Monona-CDA, an agent of Monona, published its agenda for a meeting scheduled for July 12, 2017.  The agenda stated that Monona planned to authorize an offer to condemn the 802 Broadway Property.

50.    Another item of business on Monona-CDA's agenda stated that, in violation of Chase Bank's rights in and to the Chase Bank Leasehold Estate, Monona planned to authorize a construction proposal, which included a schedule for Monona to demolish the  802 Broadway Property by October 1, 2017.

51.    Chase Bank's counsel promptly sent correspondence to Monona's City Attorney in advance of the July 12, 2017 meeting advising that Monona's condemnation of the 802 Broadway Property was not permitted under Wisconsin law.  Chase also advised that relocating the branch by the October 1, 2017 deadline was impossible.  Notwithstanding the foregoing, Chase advised Monona's City Attorney that it was willing to negotiate in good faith for Monona's acquisition of Chase's leasehold.

52.    At the July 12, 2017, Monona-CDA, an agent of Monona, voted: (a) to approve the City's condemnation offer to condemn the 802 Broadway Property, and (b) authorize the construction proposal to demolish the property by October 1, 2017. Meeting minutes from the meeting are silent on whether Monona's City Attorney, who was present at the meeting, communicated any of the issues reflected in Chase's correspondence.

9

53.     Monona CDA's approval to condemn property that Monona repeatedly has admitted it owns violates Wis. Stat. § 32.03.

## VII.     Additionally, Monona Has Not Complied with the Mandatory Procedures to Condemn or Evict Chase Bank From the Leasehold Estate

54.     As noted, Monona has entered into contracts with third parties acknowledging that it was the landlord for the 802 Broadway Property. Monona also repeatedly has admitted that it controlled Monona-LLC. Consistent with these admissions, Monona filed paperwork with Wisconsin's Department of Administration ("DOA") promising that it would comply with Wis. Stat § 32.06 as it relates to Chase's leasehold in the 802 Broadway Property.

55.     Specifically, on June 6, 2017, Monona's Relocation Agent, sent an email to the Wisconsin Department of Administration ("DOA"), attaching a proposed Small Projects Relocation Plan (the "Relocation Plan") for Monona's Riverfront Redevelopment Project, and, specifically, Chase Bank's Leasehold Estate.

56.     The Monona Relocation Plan for Chase Bank's Leasehold Estate states that the displacing agency, Monona, intends to exercise its eminent domain powers for the acquisition of the 802 Broadway Property.

57.     In the project description section for the Monona Relocation Plan for Chase Bank's Leasehold Estate, Monona's Relocation Agent assured that DOA that Monona will follow the acquisition procedure set forth in Wis Stat. § 32.06.

58.     In the same document, Monona acknowledges that "a Determination of Necessity has not been passed or filed yet."

59.     In connection with this submission to the DOA, Monona's City Administrator certified an "assurance page" for Monona Relocation Plan for Chase's Leasehold Estate. In relevant part, Monona certified and guaranteed to the Wisconsin DOA:

300452427v1 0997838

4. Businesses [specifically Chase Bank] . . . will be provided maximum assistance in reestablishing with a minimum of delay and loss of earnings;
. . .
10. All displaced persons [specifically Chase Bank] will be given a reasonable period of time to move and no one [specifically Chase Bank] will be required to move unless a comparable replacement property is available or provided for . . .

60.     As noted above, Wis. Stat.  § 32.06 provides that a municipal landlord cannot condemn property without first making a Determination of Necessity.  Further,  Monona's submission to the Wisconsin DOA acknowledged that Monona has not passed a Determination of Necessity as it related to the condemnation of the 802 Broadway Property.

61.     Not surprisingly, on June 8, 2017, a paralegal for of the Wisconsin DOA emailed Monona's Relocation Agent asking, in relevant part, why Monona has not passed or filed a Determination of Necessity and whether Monona intends to obtain such determination.

62.      On or around June 27, 2017, Monona submitted paperwork to the Wisconsin DOA indicating that the 802  Broadway Property now was being condemned pursuant to Wis. Stat.  § 32.05 (not 32.06) and enclosing a Relocation Order.

63.      Wisconsin Stat. § 32.05 is the condemnation procedure for "sewers and transportation facilities."

64.     Following the submission of Monona's revised paperwork to condemn the 802 Broadway Property pursuant to Wis. Stat.  § 32.05, the Wisconsin DOA approved Monona's Relocation Plan.

65.     Pursuant to Wis. Stat. §§ 32.06(0)(c) and 32.05(8)(c), Monona may not require Chase Bank to vacate the Leasehold Estate until a comparable replacement property is made available.

11

66.     A comparable replacement property has been identified and construction has commenced, but the Monona Chase Bank branch will not be able to be fully relocated and operational until approximately March 1, 2018.

### VIII. Monona Has Failed to Comply with Relocation Assistance Procedures Set Forth in Wis. Admin. Code Chapter 92

67.     Under Wis. Admin. Code Chapter 92, a displaced business such as Chase Bank must be given a reasonable time to move to a comparable replacement business.

68.     Under Wis. Admin. Code Chapter 92, a comparable replacement business means a business that is similar in major characteristics and functionally equivalent with respect to access to transportation necessary for the business operation, customers, utilities and public services.

69.     Under Wis. Admin. Code Chapter 92, a comparable replacement business is within reasonable proximity of the acquired business necessary to retain existing or new clientele.

70.     On July 21, 2017, Chase Bank personnel received a letter and packet of information from Monona regarding Chase Bank's notice of relocation eligibility. The letter sent by Monona's Relocation Agent stated that Chase Bank had just 90 days (*i.e.*, until October 19, 2017) to vacate the 802 Broadway Property.  The letter also identifies several properties for Chase to relocate its branch.

71.     Monona's Relocation Plan does not give Chase Bank a reasonable time to move.

72.     Monona's Relocation Plan does not ensure that a comparable replacement business is provided for or available to Chase Bank.  Indeed, all of the proposed relocation properties referenced in Monona's Relocation Plan are too far from the 802 Broadway Property to serve Chase Bank's customers.

12

73.     Chase has repeatedly advised Monona of the time needed to relocate its branch and that vacating the branch by October 2017 is impossible.  Chase also identified for Monona property that it believed would be an comparable replacement location.  Monona disregarded everything Chase has submitted on these topics.

74.     For example, on or around June 29, 2017, Chase Bank personnel sent a completed business questionnaire to Monona's Relocation Agent. The completed questionnaire sent by Chase Bank personnel on June 29, 2017, states that relocating from the 802 Broadway Property will take between six to eight months.  The questionnaire also states that Chase Bank's only viable relocation option is the vacant former Radio Shack building located at 2251 W. Broadway, Monona, Wisconsin 53713.

75.     Upon information and belief, Monona's Relocation Agent did not share any of the information contained in the completed questionnaire with anyone at Monona or the Wisconsin DOA.

76.     Additionally, as noted in paragraph 50, Chase sent correspondence to Monona's City Attorney on or around July 12, 2017 advising that Chase could not vacate the 802 Broadway Property by October 2017.

77.     Similarly, in advance of a July 17, 2017 meeting with the Monona City Counsel, Chase's counsel sent another letter to City Attorney explaining that relocating Chase Bank's bank by October 1, 2017, was impossible.

78.     In each communication, Chase Bank made clear that it was willing to negotiate in good faith with Monona for the acquisition of Chase Bank's leasehold and relocation of the property.

IX.     **Monona Changes Course and Denies Owning the Property.**

79.     After years of admissions that it owns the 802 Broadway Property and controlled the Monona-LLC, outside counsel for Monona sent correspondence to Chase on or around about July 21, 2017.  In relevant part, Monona stated that the letter was intended "to clarify some points, as there are misunderstandings."  Further, Monona stated: "The property has been owned by Monona Drive Property, LLC, not the city of Monona (the 'City'). The Community Development Authority  of the City of Monona (the "CDA') took steps to acquire the Property by condemnation and began that process.  As of July 18, 2017, the Property was acquired by the CDA.  Pursuant to the Lease, when the Property is acquired or condemned by a governmental authority, the Lease terminated.  Therefore, as of the date of the acquisition, the Lease is terminated."

80.     Monona's alleged termination of the lease was unlawful.

X.      **Monona Begins Road Work Blocking the Main Road Entrance and Drive-Up to the 802 Broadway Property**

81.     On September 29, 2017, Chase Bank was informed that, on October 2, 2017, Monona and Monona-CDA will begin road work that will close the main road entrance which provides vehicular access to the 802 Broadway Property and will block the customer vehicle drive-up to the 802 Broadway Property (the "Road Work").

82.     Also on September 29, 2017, Chase Bank's counsel sent correspondence to Monona's City Attorney, demanding that Monona cease and desist from the Road Work. The correspondence requested immediate confirmation that Monona would cease and desist from the Road Work.

83.     Monona did not provide the requested confirmation and did not respond in any way to the September 29, 2017 correspondence.

14

84.     Monona began the Road Work on October 2, 2017, as depicted in the photograph below.



## COUNT I: DEPRIVATION OF DUE PROCESS UNDER 42 U.S.C. § 1983

85.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

86.     Monona, acting under the color of state law, deprived Chase Bank of substantive and procedural due process under both the Fourteenth Amendment of United States Constitution and Article I, Section I of the Wisconsin Constitution, by, *inter alia*, not providing Chase Bank with  (1) an opportunity to be heard, (2) a reasonable period of time to relocate, and (3) a comparable replacement property.

87.     Monona's denial of due process to Chase Bank has caused harm to Chase Bank and entitles Chase Bank to an award of damages from Monona.

300452427v1 0997838

## COUNT II: TAKING WITHOUT JUST COMPENSATION UNDER 42 U.S.C. § 1983

88.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

89.     Chase Bank has the legal right to the peaceful enjoyment of Chase Bank's Leasehold Estate.

90.     Monona, acting under the color of state law, deprived Chase Bank of certain rights and/or privileges secured by the United States Constitution and the Wisconsin Constitution.

91.     In violation of the Fifth Amendment on the United States Constitution and Article 1, Section 13 of the Wisconsin Constitution, Monona has taken Chase Bank's Leasehold Estate without just compensation.

92.     Monona engaged in a regulatory and/or legislative scheme in violation of Wis. Stats. § 32.03, which prevents Chase Bank from being able to make use of its Leasehold Estate.

93.     Chase Bank has been denied compensation from Monona for its Leasehold Estate.

94.     Monona's taking of Chase Bank's Leasehold Estate occurred without providing Chase Bank an opportunity to be heard or just compensation.

95.     Chase Bank is entitled to an opportunity to be heard and just compensation for the above-mentioned taking.

## COUNT III: DEPRIVATION OF RIGHT TO EQUAL PROTECTION

96.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

97.     Monona's decision to terminate Chase Bank's Leasehold Estate was arbitrary and capricious.

300452427v1 0997838

98.     Monona singled out Chase Bank, which substantially impaired and interfered with Chase Bank's freedom to contract.

99.     Monona intentionally treated Chase Bank differently from others similarly situated and there was no rational basis for the difference in treatment.

100.     As a direct and foreseeable result of Monona's conduct, Chase Bank has suffered damages.

## COUNT IV: UNLAWFUL CONDEMNATION UNDER WIS. STAT. § 32.03

101.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

102.     Monona-CDA is Monona's agent and Monona-CDA is authorized to act on Monona's behalf.

103.     Additionally, Monona-LLC is Monona's agent and Monona-LLC is authorized to act on Monona's behalf.

104.     Under Wis. Stat. § 32.03, Monona's power of condemnation does not extend to property owned by Monona.

105.     Monona violated Wis. Stat. § 32.03 when it voted to condemn the 802 Broadway Property, which is property owned by Monona, for the sole purpose of taking Chase Bank's Leasehold Estate.

106.     Chase Bank is entitled to a judgment declaring that Monona violated Wis. Stat. § 32.03 when Monona condemned the 802 Broadway Property.

## COUNT V: MONONA'S INVALID RELOCATION ORDER/PLAN

107.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

300452427v1 0997838

108.     Monona condemned Chase Bank's Leasehold Estate pursuant to Wis. Stat. § 32.05, which is the condemnation procedure for sewers and transportation facilities.

109.     Monona did not condemn Chase Bank's Leasehold Estate to construct a sewer or transportation facility; Monona condemned Chase Bank's Leasehold Estate as part of Monona's Riverfront Redevelopment Project.

110.     The first step in a condemnation under Wis. Stat. § 32.05 is the adoption of a relocation order.

111.     In a condemnation under Wis. Stat. § 32.05, the relocation order takes the place of and constitutes a determination of necessity.

112.     If a condemning authority produces an invalid relocation order, it has not established the necessity of taking the land it seeks to condemn.

113.     Even in condemnation proceedings that do not require a relocation order, the condemnor is required to establish the necessity of taking in addition to having the right to condemn. *See* Wis. Stat. §§ 32.06(1); 32.07(2); 32.28(3)(b).

114.     Because Monona did not produce a valid relocation order, it has not established the necessity of taking Chase Bank's Leasehold Estate.

115.     Under Wis. Admin. Code Chapter 92, a relocation plan cannot be approved unless the agency submits evidence and assurances that a displaced business is given reasonable time to move and that a comparable replacement business is provided for or available.

116.     Under Wis. Admin. Code Chapter 92, a displaced business cannot be required to move unless a comparable replacement business is provided for or available.

300452427v1 0997838

117.     Under both Wis. Stat. § 32.05(8)(c) and Wis. Stat. § 32.06(9)(c)(3), the condemnor may not require the persons who occupied the premises on the date that title vested in the condemnor to vacate until a comparable replacement property is made available.

118.     Because Monona did not ensure that a comparable replacement business was provided for or available to Chase Bank, Chase is not required to move until Monona makes a comparable replacement business available.

119.     Chase Bank is entitled to a judgment declaring that Monona did not establish the requisite necessity of taking because Chase Bank did not produce a valid relocation order.

120.     Chase Bank is also entitled to a judgment declaring that Chase Bank is not required to move until Monona makes a comparable replacement business available.

<u>**COUNT VI: BREACH OF CONTRACT**</u>

121.     Chase Bank realleges and incorporates by reference, as though fully stated herein, all preceding paragraphs of this complaint.

122.     The Lease Agreement between Monona and Chase Bank attached as Exhibit A is valid contract.

123.     Chase Bank has complied with all of its obligations under the Lease Agreement.

124.     Monona breached the Lease Agreement by depriving Chase Bank of reasonable and peaceful possession and use of the leased premises.

125.     Monona breached the Lease Agreement by stating that it intends to terminate the Lease Agreement and demolish the 802 Broadway Property by October 1, 2017.

126.     Monona's breach of the Lease Agreement has damaged Chase Bank.

127.     Chase Bank is entitled to an award of damages sufficient to compensate it for the harm cause by Monona's breach of the Lease Agreement.

300452427v1 0997838

WHEREFORE, Plaintiff Chase Bank prays for relief against Defendant Monona as follows:

a.  A judgement declaring that Monona deprived Chase Bank of the due process under both the Fourteenth Amendment of the U.S. Constitution and Article 1, Section I of the Wisconsin Constitution;

b.  A judgment declaring that Monona took Chase Bank's private property without just compensation in violation of the Fifth Amendment of the U.S. Constitution and Article 1, Section 13 of the Wisconsin Constitution;

c.  A judgment declaring that Monona deprived Chase Bank of the right to equal protection under both the Fourteenth Amendment of the U.S. Constitution and Article 1, Section I of the Wisconsin Constitution;

d.  A judgment declaring that Monona violated Wis. Stat. § 32.03 when Monona voted to condemn the 802 Broadway Property, which is property owned by Monona;

e.  A judgment declaring that Monona did not establish the requisite necessity of taking because Chase Bank did not produce a valid relocation order;

f.  A judgment declaring that Chase Bank is not required to move until Monona makes a comparable replacement business available.

g.  A judgement declaring that Monona breached Chase Bank's lease by terminating the lease after Monona voted to condemn the 802 Broadway Property;

h.  Temporary injunction restraining Defendant, and any of its agents, or entities, from: (i) taking any action to interfere with Chase Bank's right to peaceful possession and use of the 802 Broadway Property through the Road Work or similar conduct, (ii) demolishing the 802 Broadway Property, or (iii) attempting to evict Chase Bank from its leasehold;

i.  Just compensation and/or compensatory damages, in excess of $75,000; and

j.  For such other and further relief as this Court deems just and equitable, such as actual attorney fees and costs incurred in prosecuting this action.

300452427v1 0997838

Dated this 2nd day of October, 2017.

/s/ Russell A. Klingaman

Russell A. Klingaman
State Bar No. 1000676
Mollie T. Kugler
State Bar No. 1093318
Attorneys for Plaintiff JPMORGAN CHASE
BANK, N.A.
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Telephone  414-276-6464
Fax  414-276-9220
E-mail  rklingaman@hinshawlaw.com
mkugler@hinshawlaw.com

300452427v1 0997838